## Benjamin S. Pearsall, Appellant, v. The Elgin National Bank, Appellee.

### Gen. No. 5,808.

1. INJUNCTIONS, § 204*—*when complainant has burden of proof.* A complainant who files a bill praying that a defendant be restrained from transferring a certain promissory note, and that said note be released and discharged as a liability against complainant, has the burden of establishing the case stated by his bill by a preponderance of evidence.

2. BILLS AND NOTES, § 308*—*when note is discharged.* Where a plaintiff executed and delivered a note to a bank in satisfaction of an assistant cashier's indebtedness to such bank, and such cashier gave additional notes of his own to secure the debt but the evidence did not show that plaintiff's note was to be cancelled or taken up by such additional notes, *held* that the plaintiff was not harmed by such course.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

3. APPEAL AND ERROR, § 1395*—*when finding of trial court will not be disturbed.* The conclusion of a trial court that the material allegations of a bill to enjoin the transfer of a note and for discharge of such note were not proved, *held* sustained by the evidence.

Appeal from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913. Rehearing denied October 9, 1913.

DeGOY B. ELLIS, for appellant; EUGENE CLIFFORD, of counsel.

RUSSELL & McNERNEY and R. S. EGAN, for appellee.

MR. PRESIDING JUSTICE WHITNEY delivered the opinion of the court.

Benjamin S. Pearsall, appellant, filed a bill in the court below against the Elgin National Bank, appellee, praying in substance that appellee be restrained from transferring a certain promissory note given by appellant to appellee and from entering the same in judgment, and that said note be released and discharged as a liability against appellant.

An answer was filed and replication to the answer. Subsequently the bill was amended, an answer filed to the amended bill and replication to this answer was filed. The cause was heard before the court on the verbal testimony of witnesses there produced and certain documentary evidence offered as exhibits. The bill on hearing was dismissed for want of equity and from the decree dismissing the bill this appeal is taken.

There are seven errors assigned: First, error in admitting improper evidence offered by appellee; second, error in rejecting proper evidence offered by appellant; the third, fourth, fifth, sixth and seventh are all in substance that the proof does not warrant the decree.

No argument is made by the appellant, or even sug-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

gested, in support of the first and second errors assigned, and therefore these errors are treated as waived. The case then comes before this court solely on questions of fact. We do not see that any legal questions are involved. It was incumbent on the appellant to establish the case stated by his bill by the preponderance of the evidence, and the only question before this court is, has he done so?

The bill charges in substance that appellee had been running as a bank for several years; that M. C. Jocelyn was on December 16, 1910, assistant cashier of appellee; that on December 16, 1910, C. F. O'Hara, then appellee's cashier, reported to appellant that Jocelyn owed appellee unsecured notes to the amount of $12,937, or more; that said cashier also reported that Jocelyn owed other notes that were fully secured; that appellee was in a bad condition because of Jocelyn's unsecured notes and the other notes, and that the capital of appellee was in danger of being reported impaired, and that Jocelyn's indebtedness should be paid in cash or good notes substituted for the unsecured notes; that said cashier on behalf of appellee then promised appellant that if appellant would make and deliver to appellee his note for $12,230 it would be accepted by appellee in full satisfaction of all of Jocelyn's indebtedness; that Jocelyn would be retained as assistant cashier at a salary of $2,400 a year and as one of appellee's directors; that said cashier further agreed for appellee that Jocelyn should transfer all his property to appellant as a further consideration for the giving of said note for $12,230; that appellant was without knowledge on the subject except what was then told him by said cashier, and believing the same, and relying thereon, he made the said note, and that it was the understanding and agreement that appellant was to be and remain the sole and only signer of said note, but that appellee subsequently obtained Jocelyn's signature to said note, and that by reason thereof said note became void as to appellee, but not so as to third

persons. The bill then alleges in substance that appellee failed to keep any of its said agreements that entered into the consideration of said note, and that a request by appellant was made of appellee that appellee cancel said note, or in some way keep appellant from all liability thereon, but appellee refused so to do.

The answer in substance admits that appellee is a bank; admits Jocelyn is appellant's brother in law, and that Jocelyn was on December 16, 1910, and for some time before that appellee's assistant cashier and one of its directors; admits that said cashier advised appellant that Jocelyn was indebted to appellee, and that Jocelyn's personal indebtedness amounted to $12,937, or more, and that he was otherwise indebted to appellee; admits that said cashier stated to appellant that Jocelyn's personal indebtedness would have to be paid or secured so that it would meet the approval of the bank examiner. The answer in substance denies all of the other material allegations of the bill, and avers that appellant had full knowledge of Jocelyn's affairs, and that he signed said note as a surety for Jocelyn out of consideration of the family relationship, and to aid Jocelyn in his financial troubles.

In the main the evidence in support of the bill is that of appellant, and in the main the evidence in support of the answer is that of said cashier. The evidence of appellant and of said cashier is in absolute conflict on the material issues. If the case rested there we would be of the opinion that the appellant has not established any of the material allegations of his bill by a preponderance of the evidence. The additional evidence furnishes proof of circumstances which seem to us to corroborate said cashier's theory of the case, so we are inclined to the opinion that appellant understood he was to be security only on said note.

As to the several notes which were to be taken up or satisfied by the new note in question, the evidence shows they were all taken off appellee's books, and taken out of appellee's notes and put into a basket on

the cashier's desk, and when Jocelyn asked for them the cashier told him they better remain and Jocelyn acquiesced in that and is not now making any complaint. Appellee has never sought to enforce them against him so far as appears from the evidence. It is charged that the following May the cashier took two notes covering the indebtedness included in the note in question, one a note for $1,000 signed by Jocelyn, and one for about $2,700 signed by him and his wife. These notes were due in a year and did not have the effect of extending the time of payment of the note in question. There is no evidence to the effect that the $12,230 note was to be cancelled or taken up by these two notes. *Oxley v. Storer,* 54 Ill. 159. We fail to see how the appellant was harmed thereby.

It seems that appellee was seeking a reorganization, and as the examiner claimed the surplus had become exhausted by bad paper, and that the note in question for $12,230 was therefore an excess loan, he recommended the taking of these additional notes, appellee still to hold the note for $12,230 as the primary indebtedness. Appellant was not and could not be harmed by such a course.

Jocelyn testified that he quit appellee's service December 31, 1911; that his term was out and that he had a couple of months prior thereto handed in his resignation; that he had not talked with anyone about it except with the president; that he told him he had it in mind and that the president said he thought he would resign if he were in Jocelyn's place, so that it would appear that Jocelyn quit appellee's service voluntarily.

The trial court had the advantage of seeing and hearing the witnesses personally and came to the conclusion that the material allegations of the bill were not proved. We have before us only the record and are of the same opinion. The judgment of the trial court is therefore affirmed.

*Affirmed.*

MR. JUSTICE CARNES having tried the case in the court below, took no part in this decision.